CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

JAN 29 2010

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MICHAEL J. HOWARD, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 7:08cv00552 |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) By: Michael F. Urbanski |
| Commissioner of Social Security, | ) United States Magistrate Judge |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Michael J. Howard ("Howard") brings this action for review of the Commissioner of Social Security's ("Commissioner") decision denying his claim for disability insurance benefits and supplemental security income benefits under the Social Security Act (the "Act"). On appeal, Howard contends that the Administrative Law Judge ("ALJ") erred by failing to properly credit the opinion of his treating pain management physician, Dr. Cyrus E. Bakhit, and improperly evaluating Howard's complaints of pain. Having reviewed the record, the court finds that the Commissioner's decision is supported by substantial evidence and must be affirmed.

I

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v.

Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that his ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or

2

her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II

Howard was born in 1960 (Administrative Record, hereinafter "R." 142), and he completed high school and some college. His past relevant work includes employment for several years as a master control operator for a television station. (R. 186.) Howard lost this job on November 5, 2001, and claims disability since that date. He previously filed an application for disability benefits, which was denied at the administrative hearing level on December 23, 2004. This denial was appealed to federal court and was affirmed in Howard v.

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. §§ 404.1529(a), 416.929(a).

3

Barnhart, No. 7:06cv00002, 2006 WL 3469592 (W.D. Va. Nov. 29, 2006). Consequently, although Howard claims disability beginning November 5, 2001, the period at issue in this case commences the day after the Commissioner decided the earlier case, December 24, 2004.[2]

Howard claims disability for a host of impairments, which the ALJ found to be severe, including hepatitis C and liver disease, degenerative disc disease, obesity, diabetes with neuropathy in the right lower extremity, gastroesophageal reflux disorder ("GERD"), irritable bowel syndrome, history of rotator cuff injury, fibromyalgia, and recurrent ear infection and sinusitis. (R. 14.) Considering the evidence of record, the ALJ found that Howard has the RFC for light work, except that he is limited to climbing ramps and stairs occasionally and should never climb ladders, ropes or scaffolds; he can only occasionally balance, stoop, kneel, crouch and crawl; he cannot perform overhead reaching; and he must avoid concentrated exposure to hazards. (R. 16.) The ALJ held that Howard is capable of performing his past relevant work in the television broadcast industry, and noted that there are other jobs existing in the local and national economy that Howard can perform. (R. 19.)

To be sure, Howard has been treated for a number of ailments, but there is little question that most of his complaints have no significant functional component. There is no doctor who has opined that any of Howard's gastrointestinal or internal medicine issues preclude him from working. Drs. Rodney Poffenberger, A. Sidney Barritt, III and Garrison Bennett, who treated Howard for a variety of ailments, have not indicated that Howard cannot work. As such, substantial evidence supports the ALJ's decision regarding Howard's myriad internal medicine issues.

---

[2] All of the impairments claimed by Howard in this case are the same as in his earlier case with the exception of diabetes mellitis, which is new. (R. 425.)

Further, the ALJ determined that Howard's claimed mood disorder did not cause more than a minimal limitation in his ability to perform basic mental work activities and was not considered to be severe. (R. 14.) The record reflects one mental health hospital admission in April, 2004. The impression of the treating psychiatrist, Tracey Crist, M.D., was of a major depressive disorder, single episode, that seemed to have cleared. (R. 261-65.) There are no subsequent treatment records from any mental health providers, nor do the treatment records from other health care providers reflect any mental health issues. Indeed, only two other medical records make reference to such issues, and those records do not suggest any impairment in that regard. On March 3, 2005, Howard was seen by Dr. Garrison Bennett for chest pain and GERD, at which time Dr. Bennett noted no depression or anxiety. (R. 281.) More recently, on March 6, 2008, Dr. Olga Kuchmak, examining Howard for ear discomfort, noted in her mental status exam that there was no depression, anxiety, or agitation. (R. 463.) The record contains two Psychiatric Review Techniques completed by two state agency psychologists in 2007, each of whom concluded that Howard did not have a severe mental impairment. (R. 365-77, 392-405.) On this record, substantial evidence supports the ALJ's conclusion regarding the mental health issue.

### III

The most significant impairment facing Howard, and the crux of this appeal, is his neck pain. The only objective evidence for this pain is an MRI taken of his cervical spine on December 17, 2003, indicating mild disk bulge without significant stenosis at C3-4 and C5-6, and disk bulge at C4-5 with moderate right foraminal stenosis. (R. 270.) The record contains no treatment by an orthopedic or neurological specialist for these problems. Howard was treated for

his neck pain exclusively by Dr. Bakhit, a pain management specialist. He argues on appeal that the ALJ erred by failing to give proper weight to Dr. Bakhit, his treating physician.

## A.

Howard saw Dr. Bakhit five times in 2005 and seven times in 2006 for his pain.[3] On each of the 2005 visits and the visit in March, 2006, Dr. Bakhit performed bilateral C3-4, C4-5, and C5-6 cervical facet joint nerve blocks. Howard consistently reported to Dr. Bakhit that these injections were helpful in controlling his pain, but that it would gradually return after a period of time. On June 12, 2006, Dr. Bakhit performed a different procedure, radiofrequency thermoneurolysis, on the right side of Howard's neck in an effort to provide more lasting pain relief. (R. 340-41.) This procedure apparently worked, as Howard reported improvement a month later on July 10, 2006, (R. 342), at which time the procedure was repeated on the left side of his neck. Howard did not see Dr. Bakhit again for three months, and on October 13, 2006, reported that "he experienced 100% pain relief with the use of this treatment which started to gradually return in the past month or so." (R. 345.) Howard advised that the radiofrequency thermoneurolysis procedures afforded him the best pain relief he had experienced, and repeat procedures were performed in November and December, 2006. (R. 345-52.) The record contains no further evidence of any subsequent treatment by Dr. Bakhit.

Dr. Bakhit completed a Residual Functional Capacity Questionnaire in December, 2006. (R. 353-57.) His responses on that form indicate that Howard suffered from chronic neck pain and that his prognosis was fair. Dr. Bakhit characterized Howard's pain as being "neck pain

---

[3] Even though the date of the ALJ's decision in prior case was December 23, 2004, the court previously reviewed records of Howard's visits to Dr. Bakhit through March 6, 2006 in connection with the court's prior opinion, as Howard sent those records to the Appeals Council. Five subsequent visits to Dr. Bakhit, from June to December, 2006, are new in this record, along with Dr. Bakhit's December 13, 2006 Residual Functional Capacity Questionnaire.

associated with activities such as lifting, looking up, overhead type activities." (R. 353.) He described his clinical findings as "[d]ecreased range of motion of the cervical spine. Findings on MRI." (R. 354.) Dr. Bakhit stated that Howard's pain frequently would interfere with his attention and concentration, but he was capable of low stress jobs. (R. 354-55.) Dr. Bakhit responded that Howard could sit or stand for one hour at a time before having to move around. (R. 355.) He did not believe that Howard needed unscheduled restroom breaks or needed to lie down at unpredictable intervals during a normal work day. (R. 356.) Dr. Bakhit stated that Howard could occasionally lift less than 10 pounds, rarely lift 10 pounds and never lift 20 pounds, and occasionally twist, stoop, crouch, and climb stairs and ladders. (R. 356.) Dr. Bakhit answered that Howard's impairments were likely to produce good days and bad days, and that he would be likely to miss about four days a month due to his impairments or treatment. (R. 357.)

Howard argues that the ALJ committed reversible error by not giving greater weight to the opinion of Dr. Bakhit and by crediting the opinions of state agency physicians. In assessing Howard's RFC, the ALJ rejected the opinion of Dr. Bakhit in favor of the opinion of state agency doctor, Frank M. Johnson, M.D., who, upon review of Howard's records, opined that Howard was capable of performing light work. Dr. Johnson completed a Physical Residual Functional Capacity Assessment on May 15, 2007, in which he concluded that Howard could lift 20 pounds occasionally, 10 pounds frequently, and stand and sit for six hours in an eight hour workday. (R. 386.) He stated that Howard was precluded from overhead lifting and from climbing ladders, ropes and scaffolds. (R. 387.) A few months earlier, on February 5, 2007, Dr. Donald Williams, another state agency physician, reached the same conclusion regarding Howard's capacity to work. (R. 358-64.) Presumably, Dr. Williams did not have the benefit of

Dr. Bakhit's December, 2006 evaluation, because he does not refer to it in his report. However, the later report completed by Dr. Johnson summarized and considered the opinion of Dr. Bakhit, and found that Howard's symptoms do not preclude work, as described in his RFC. (R. 391.)

Considering this evidence, the ALJ determined that Howard had the RFC to perform light work consistent with the findings of the state agency physicians. Based on the testimony of a Vocational Expert ("VE") at the administrative hearing, the ALJ concluded that Howard could return to his past relevant work as a television master control operator, as that work was sedentary and skilled. An issue was raised at the hearing as to whether Howard could perform his past relevant work while being limited in overhead reaching, as he testified that he had to get videotapes off of shelves. (R. 60.) The VE testified that the Dictionary of Occupational Titles did not address overhead reaching in this job, but regardless of the past relevant work, there were myriad other jobs in the national economy which Howard could perform at the sedentary, unskilled level. (R. 62.) To accommodate Howard's need to move around, the VE noted that many of these sedentary jobs allowed a sit/stand option. (R. 65.)

## B.

The ALJ is required to analyze every medical opinion received and determine the weight to give to such an opinion in making a disability determination. 20 C.F.R. §§ 404.1527(d), 416.927(d). A treating physician's opinion is to be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Social Security Ruling 96-2p. The ALJ is to consider a number of factors, which include whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for

8

the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. §§ 404.1527(d), 416.927(d). A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," and the ALJ must provide her reasons for giving a treating physician's opinion certain weight or explain why he discounted a physician's opinion. Mastro, 270 F.3d at 178; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").

In this case, the ALJ addressed the RFC Questionnaire completed by Dr. Bakhit and explained why he placed less reliance on it. (R. 18-19.) He explained that Dr. Bakhit saw Howard only a few times in 2006 and that his pain assessment was not consistent with Howard's impairments, his activities of daily living, or the medical findings in other treatment records. (R. 18-19.) The ALJ noted that a report from a March, 2008 medical visit indicated that Howard was not in any pain, and held that Dr. Bakhit based his opinion primarily on Howard's own reports of pain. (R. 18-19.)

The court's review of Dr. Bakhit's records reveals that Dr. Bakhit's initial treatment of Howard consisted of periodic pain injections, from which Howard obtained some temporary relief. In 2006, Howard reported good success with the radiofrequency thermoneurolysis procedures, and Howard has not been treated by Dr. Bakhit since then. In and of itself, Dr. Bakhit's 2006 RFC Questionnaire suggests fewer restrictions than Howard claims. For example, Howard testified that he needs to lie down three to four times a day for thirty minutes to three

9

hours, depending on his level of fatigue, (R. 42-43), while Dr. Bakhit did not note such a limitation on the RFC Questionnaire. (R. 356.) Further, Howard testified that he was limited to sitting or standing for fifteen minutes, (R. 42), whereas Dr. Bakhit indicated he could do so for an hour. (R. 355.) From a functional standpoint, the most salient point in Dr. Bakhit's response to the RFC Questionnaire is his opinion that Howard would miss four days of work a month. (R. 64.) But there is nothing in Dr. Bakhit's records to support this conclusion, nor does he provide any explanation for this excessive rate of absenteeism. As such, it cannot meet plaintiff's burden of establishing disability.

In sum, Dr. Bakhit's clinical findings do not support the limitations provided on the December, 2006 RFC Questionnaire, which appear to have been based on Howard's subjective complaints of pain. Aside from this RFC form, there is no other disability opinion - or any suggestion of disability - in the numerous medical records. Dr. Johnson, the state agency reviewer, thoroughly assessed all of Howard's records, including Dr. Bakhit's RFC Questionnaire, and opined that Howard could perform light work. On this record, substantial evidence supports the ALJ's decision to credit the opinions of the state agency physicians over that of Dr. Bakhit. See Smith v. Schweiker, 795 F.2d 343, 346 (4th Cir. 1986) ("the testimony of a non-examining physician can be relied upon when it is consistent with the record" (quoting Kyle v. Cohen, 449 F.2d 489, 492 (4th Cir. 1971)).

### C.

Plaintiff also contends that the ALJ improperly evaluated his complaints of pain. In light of conflicting evidence contained in the record, it is the duty of the ALJ to fact-find and to resolve any inconsistencies between a claimant's alleged symptoms and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Accordingly, the ALJ is not required to

accept Howard's subjective allegation that he is disabled by pain, but rather must determine, through an examination of the objective medical record, whether he has proven an underlying impairment that could reasonably be expected to produce the symptoms alleged. Craig v. Chater, 76 F.3d 585, 592-93 (4th Cir. 1996) (stating the objective medical evidence must corroborate "not just pain, or some pain, or pain of some kind or severity, but the pain the claimant alleges she suffers"). Then, the ALJ must determine whether Howard's statements about his symptoms are credible in light of the entire record. Credibility determinations are in the province of the ALJ, and courts normally ought not interfere with those determinations. See Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989).

It appears from the record that Howard suffers from chronic neck pain, which was successfully treated by Dr. Bakhit, first by facet nerve block injections and later by radiofrequency thermoneurolysis procedures. Dr. Bakhit's records confirm the pain relief afforded by these periodic procedures and do not support the conclusion that Howard is disabled from all work. See Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965) (if a symptom can be reasonably controlled by medication or treatment, it is not disabling). After carefully reviewing the entire record, there is no reason to disturb the ALJ's credibility determination. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight).

## IV

It is the court's role to determine whether the Commissioner's decision is supported by substantial evidence. In this case, substantial evidence supports the Commissioner's determination that Howard has not met his burden of establishing that his impairments render

him functionally unable to engage in substantial gainful employment. See Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972); see also Hays v. Sullivan, 907 F.2d 1453, 1457-58 (4th Cir. 1996); Gross v. Heckler, 785 F.2d 1163, 1165 (4th Cir. 1986). In sum, the Commissioner appropriately considered all Howard's medical records, including the questionnaire responses of Dr. Bakhit, and assessed Howard's credibility.

In affirming the final decision of the Commissioner, the undersigned does not suggest that Howard is entirely free of all pain and subjective discomfort. However, the administrative record fails to establish the existence of any condition which would reasonably be expected to have resulted in total disability from all forms of substantial gainful employment.

An appropriate Order dismissing this appeal will be entered.

ENTER: This 29th day of January, 2010.

Michael F. Urbanski
United States Magistrate Judge